UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 05-1665(DSD/SRN)

Caleb R. Sturge,

    Plaintiff,

v.                                **ORDER**

Northwest Airlines, Inc.,

    Defendant.

    Richard T. Wylie, Esq. 701 Fourth Avenue South, Suite 500, Minneapolis, MN 55415, counsel for plaintiff.

    Molly B. Thornton, Esq., Timothy R. Thornton, Esq., Timothy G. Gelinske, Esq. and Briggs & Morgan, 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion of defendant Northwest Airlines, Inc. ("Northwest") for summary judgment. Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants Northwest's motion.

**BACKGROUND**

This dispute arises out of Northwest's termination of plaintiff Caleb R. Sturge's ("Sturge") employment as a Boeing 747 first officer on October 31, 2003. Sturge began working for Northwest in February 1989 pursuant to the terms of a collective bargaining agreement ("CBA") negotiated by the Air Line Pilots Association ("ALPA"), the exclusive bargaining representative of

Northwest pilots. Relevant to this action, the CBA provides for accrual of seniority during a medical leave of absence, return to service, pass privileges and paid medical and dental insurance. (See Thornton Aff. Ex. 13 ¶¶ 13(B), 22, 26(CC), 27(A)(1)(c)(2)(c).) The CBA adopted the Northwest Airlines Pension Plan for Pilot Employees ("Plan"). The Plan provides disability-retirement income to qualifying pilots.

In July 2003, Sturge began long-term medical leave due to a water-skiing injury. (Sturge Dep. Ex. 1 at 1010.) Shortly thereafter, Sturge's airman medical certificate expired, making him ineligible to serve as a pilot. (See Thornton Aff. Ex. 3.) On October 8, 2003, Sturge applied for disability-retirement benefits under the Plan. (Id.) On October 17, 2003, Sturge was arrested for possession of marijuana. (Id. Ex. 6 at 1258.) Northwest's rules of conduct prohibit flight personnel from using or possessing marijuana. (See id. Ex. 7 at 211-12.) On October 27, 2003, Sturge admitted to possession and use of marijuana in violation of Northwest's drug and alcohol policy. (Id. Ex. 6 at 1259.) Northwest terminated his employment on October 31, 2003.

Pursuant to the CBA, Sturge and the ALPA grieved his termination to the System Board of Adjustment ("Board"). On October 5, 2004, the Board found that Northwest properly terminated

Sturge.[1]  (Id. Ex. 6 at 1264-65.)  On November 22, 2004, Northwest granted Sturge disability-retirement income under the Plan, retroactive to October 31, 2003, but did not include retirement pass privileges or fully paid health insurance.  (See id. Ex. 11.) Sturge did not grieve Northwest's application or interpretation of the Plan to the Pilot Retirement Board, as required by the Plan. (See Wolff Aff. ¶¶ 4-5.)

Sturge brought this action on August 3, 2005,[2] claiming that Northwest terminated him in retaliation for seeking Plan benefits and to interfere with his receipt of future benefits in violation of § 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140.[3]  The court now considers Northwest's motion for summary judgment.

---

[1] Sturge does not challenge this decision in the instant action.  See Hastings v. Wilson, 516 F.3d 1055, 1059 (8th Cir. 2008) (decisions of adjustment board not reviewable by district court).

[2] The case was administratively terminated on September 27, 2005, because of Northwest's then-pending bankruptcy proceedings. The court reopened the case on May 28, 2008.

[3] The court previously determined that the Railway Labor Act does not divest it of subject-matter jurisdiction over Sturge's ERISA retaliation and interference claims, because the question of whether Northwest unlawfully retaliated or interfered with Sturge's prospective benefits was not "inextricably intertwined" with the CBA or the Plan.  (See Order [Doc. No. 40] 5-10.)

**DISCUSSION**

**I.   Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

## II. Section 510 of ERISA

Section 510 of ERISA forbids an employer from retaliating against a participant in an employee benefits plan "for exercising a right to which he is entitled" under the plan and from interfering "with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. Sturge may establish a § 510 claim either through direct evidence or indirectly, through the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Manning v. Am. Republic Ins. Co., 604 F.3d 1030, 1042 (8th Cir. 2010). Under McDonnell Douglas, the plaintiff must first establish a prima facie case. See Kinkead v. Sw. Bell Tel. Co., 49 F.3d 454, 456–57 (8th Cir. 1995). The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. Id. at 456. If the defendant satisfies its burden, the plaintiff must show that the defendant's reason is pretext for unlawful discrimination. Id.

### A. Retaliation

Sturge first argues that Northwest discharged him in retaliation for applying for disability-retirement benefits. To establish a prima facie case of ERISA retaliation, Sturge must show that (1) he participated in protected activity, (2) he suffered an adverse employment action and (3) there is a causal connection between his activity and the adverse action. Rath v. Selection

5

Research, Inc., 978 F.2d 1087, 1090 (8th Cir. 1992). Only the third element is in dispute.

Although a "causal connection may be proved circumstantially by proof that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive," id., more than temporal connection is generally required to present a genuine issue of fact. Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002); but see Kinkead, 49 F.3d at 456 (noting termination one week after application for benefits might support inference). Moreover, "the presence of intervening events undermines any causal inference that a reasonable person might otherwise have drawn from temporal proximity." Freeman v. Ace Tel. Ass'n, 467 F.3d 695, 698 (8th Cir. 2006) (citing Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc)).

Sturge argues that his termination two weeks after he applied for disability-retirement benefits establishes a causal connection. Additionally, Sturge argues that then-vice president of labor relations for Northwest, Robert Brodin ("Brodin") knew about his application for disability-retirement benefits when he decided to fire Sturge. In support, Sturge contends that Robert Tice, a member of Brodin's staff, knew about his application. Sturge further contends that Brodin's department directed Northwest's pension department to suspend processing of Sturge's application for disability-retirement benefits. Northwest argues that Brodin

had no knowledge of Sturge's application. (See Brodin Dep. 15.) Additionally, Northwest asserts that Sturge's intervening arrest for marijuana possession negates an inference of a causal connection.

Viewing the record in the light most favorable to Sturge, the court determines that, although Sturge has produced facts sufficient to make a prima facie showing that Brodin knew about his application for disability-retirement benefits, his intervening arrest and admission that he violated Northwest's drug and alcohol policy makes inference of a causal connection unreasonable. See Freeman, 467 F.3d at 698. Therefore, Sturge has not made a prima facie case of ERISA retaliation, and summary judgment is warranted.

Moreover, even if Sturge could establish a prima facie case of ERISA retaliation, his claim fails at the pretext stage. Northwest asserts a legitimate, non-discriminatory reason for firing Sturge: he violated company policy by possessing and using marijuana. To prove that Northwest's proffered reason is pretextual, Sturge must either discredit it or offer evidence from which a jury may draw a reasonable inference that retaliation was more likely the reason Northwest fired him. See Fitzgerald v. Action, Inc., 521 F.3d 867, 872 (8th Cir. 2008) (ERISA interference); accord Torgerson v. City of Rochester, 605 F.3d 584, 597 (8th Cir. 2010). Evidence that employees who were similarly situated in every relevant way but treated differently may support an inference of retaliatory motive.

7

See Koons v. Aventis Pharm., Inc., 367 F.3d 768, 779 (8th Cir. 2004) (citation and quotation marks omitted).

Sturge argues that he is similarly situated to pilot William Brewbaker ("Brewbaker"), and that Northwest treated Brewbaker more favorably than him. In 1995, while under the terms of a "last-chance agreement," Brewbaker's aircraft left the paved ramp during positioning at the jetway. (See Wylie Decl. Ex. D at 12849.) As a result, Northwest directed Brewbaker to give a urine sample, which he falsified. (Id. at 12822, 12845.) A later sample revealed marijuana in Brewbaker's system. (Id. at 12818.) During Northwest's investigation into Brewbaker's conduct, Brewbaker resigned and elected early retirement. (See id.; id. Ex. E.) Northwest deemed him ineligible for pass privileges. (Id. Ex. D at 12818.) Following a grievance by the ALPA, Northwest agreed to reinstate Brewbaker's pass privileges. (See Second Thornton Aff. Ex. 21.)

Although Brewbaker and Sturge both violated Northwest's drug and alcohol policy, Brewbaker is not similarly situated to Sturge. First, Brewbaker was not terminated by Northwest: he retired just eight days after the misconduct, before Northwest concluded its investigation. (Wylie Decl. Ex. E.) Second, Brewbaker's last-chance agreement and pass privileges were the result of confidential, non-precedential settlement agreements between the ALPA and Northwest. (See Second Thornton Aff. Exs. 20-21.) The

8

ALPA grieved Sturge's discharge, but did not seek reinstatement of pass privileges. Therefore, Brewbaker is not similarly situated to Sturge. Because Sturge offers no other comparator employee, there is no genuine dispute of material fact about Northwest's reason for his termination, and he fails to show pretext. Accordingly, the court grants summary judgment on Sturge's ERISA retaliation claim.

**B. Interference**

To establish a prima facie ERISA interference case, Sturge must show that (1) Northwest subjected him to an adverse employment action; (2) he was likely to receive future benefits; and (3) a causal connection existed between the adverse action and the likelihood of future benefits. See Manning, 604 F.3d at 1043–44. Sturge must also show that a motivating factor in Northwest's decision to terminate him was "a specific intent to interfere with [his] benefits." Pendleton v. QuikTrip Corp., 567 F.3d 988, 992 (8th Cir. 2009) (citing Register v. Honeywell Fed. Mfg. & Techs., LLC, 397 F.3d 1130, 1136-37 (8th Cir. 2005)); see also Koons, 367 F.3d at 777.

Sturge argues that Northwest had a financial incentive to terminate him to avoid paying the costs of his disability-retirement benefits. This argument is undermined, however, by Northwest's approval of his disability retirement. Moreover, Sturge's ERISA interference claim fails for the same reasons as his retaliation claim: he has not established a causal connection

9

between his termination and his receipt of benefits. Furthermore, Sturge's ERISA interference claim also fails at the pretext stage because he offers no evidence that similarly-situated pilots who violated the drug and alcohol policy were treated more favorably. Accordingly, Sturge's ERISA interference claim fails, and summary judgment is warranted.[4]

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that Northwest's motion for summary judgment [Doc. No. 93] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 14, 2010

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court

---

[4] Because Sturge's § 510 claims fail, the court does not reach Northwest's ERISA exhaustion argument as to the remedies that Sturge seeks.